UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC MICHAEL CHEEK, | ) |
| Petitioner, | ) |
| v. | ) Case No. 15-1114 |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**O R D E R**

This matter is now before the Court on Petitioner, Eric Cheek's ("Cheek"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Cheek's § 2255 Motion [1] is DENIED.

**BACKGROUND**

Following a jury trial, Cheek was convicted of conspiracy to distribute crack cocaine and marijuana (Count 1), possession with intent to distribute crack cocaine (Count 2), possession with intent to distribute marijuana (Count 3), and use of a telephone to facilitate a drug trafficking crime (Counts 4 and 5). He was sentenced to concurrent terms of 576 months' on Counts 1 and 2, 120 months on Count 3, and 48 months on Counts 4 and 5. Cheek pursued an appeal to the Seventh Circuit, but his convictions and sentence were affirmed. *United States v. Cheek*, 740 F.3d 440 (7th Cir. 2015). His petition for writ of certiorari to the United States Supreme Court was denied on May 5, 2014.

Cheek now brings this § 2255 motion in which he raises essentially five claims of ineffective asistance trial counsel: (1) trial counsel was ineffective for failing to object to the two-level

enhancement pursuant to U.S.S.G. § 3B1.4 for use of a minor in committing a crime; (2) failing to object to the 4-level enhancement for role in the offence under § 3B1.1; (3) failing to contact, interview, and call certain witnesses; and (4) failing to advise the Court that he had a conflict with government witness Tabitha Harris.  Cheek also alleges a fifth claim of ineffective assistance of appellate counsel for failure to raise grounds one and two, and a denial of due process based on drug weight.  The Government has filed its response, and this Order follows.

## DISCUSSION

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995).  Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993), *citing Scott v. United States*, 997 F.2d 340 (7th Cir. 1993).

A § 2255 motion is not, however, a substitute for a direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S.Ct. 205 (1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).  Federal prisoners may not use § 2255 as a vehicle to circumvent decisions made by the appellate court in a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Doe*, 51 F.3d at 698.  Accordingly, a petitioner bringing a § 2255 motion is barred from raising: (1) issues raised on direct appeal, absent some showing of new evidence or changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; or (3) constitutional issues that were not raised on direct appeal, absent a showing of cause for the default and actual prejudice from the failure to appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir.

1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 710-20 (7th Cir. 1994).

## I.   Ineffective Assistance of Counsel

Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment. *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). The seminal case on ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." *Id.*, at 687-88; *Wyatt v. United States*, 574 F.3d 455, 458-59 (7th Cir. 2009). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*, at 690. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado*, 936 F.2d 303, 311 (7th Cir. 1991).

Cheek alleges that his trial and appellate counsel, Chester Slaughter and Catherine O'Daniel respectively, were ineffective for failing to challenge the enhancements for use of a minor in the offense and role in the offense. He also contends that trial counsel was ineffective for failing to investigate and call certain witnesses and to advise the Court of his conflict with Tabitha Harris. Each argument will be addressed in turn.

The first challenge to the effectiveness of counsel is that both trial and appellate counsel failed to challenge the enhancements under § 3B1.4 for use of a minor to commit a crime and § 3B1.1 for his role in the offense. Cheek maintains that he did not "use or attempt to use" a minor

to commit a crime, but rather he simply supplied her with marijuana occasionally for her own personal use, which is insufficient to establish affirmative action to involve her in his drug trafficking operation.

The enhancement was applied based on evidence that Cheek directed a co-conspirator, Langston Pates, to supply the minor (co-conspirator Tabitha Harris' daughter) with 1/4 pound of marijuana on at least three separate occasions, as well as phone conversations between Cheek and the minor. The phone conversations between Cheek and the minor discussed supplying her with marijuana and directing her to purchase it from Pates. Cheek then coordinated her purchase with Pates, telling him to sell her 1/4 pound quantities of marijuana for $335 and indicating that she probably wouldn't purchase more than five or six a week. While the minor was clearly in a subordinate position of purchasing the marijuana from the conspiracy, this conduct is sufficient to demonstrate that Cheek made affirmative actions to involve the minor in his criminal activities under *United States v. Vivit*, 214 F.3d 908, 914 (7th Cir. 2000). Any objection would have been without merit, and counsel was not ineffective for failing to make such an objection.

Even assuming arguendo that the objection would have had merit, it would have made no difference in the outcome of the sentencing. Cheek's base offense level was 34, which became a 36 with the 2-level enhancement under § 3B1.4. With or without the 2-level increase, his sentencing range would have remained 360 months' to life in prison. Accordingly, any error would have been harmless and would still not establish ineffective assistance of counsel.

The 4-level enhancement for role in the offense under § 3B1.1(a) applies to "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive . . ." Factors to be considered include the exercise of decision making authority, the nature of the participation, the recruitment of accomplices, the claimed right to a larger share of the benefits, the

degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control or authority exercised over others. § 3B1.1 comment.

Cheek argues that there was no evidence that he organized, led, managed, or supervised anyone, as none of the cooperating witnesses testified that they worked for him. In other words, he asserts that he merely had a buyer-seller relationship with these others that would not support an aggravating role adjustment. However, the overwhelming evidence presented at trial established that Cheek used runners to transport crack cocaine and marijuana that he was fronting to distributors in the Bloomington area who then distributed the drugs to their customers. The runners would then collect the money owed for the fronted crack and marijuana on behalf of Cheek. Several cooperating witnesses also testified to either receiving instructions from Cheek or conducting business at his direction. Cheek's self-serving interpretation of this evidence does not eliminate the probative value of this evidence, which the jury obviously believed and accepted, in convicting him at trial. Cheeks trial and appellate counsel were not ineffective for failing to raise an argument that was doomed to fail, and he has failed to establish ineffective assistance of counsel on this point.

Cheek's third argument is that his trial counsel failed to contact, interview, and call several people he identified to be defense witnesses. Specifically, he asserts that he provided counsel with the names and anticipated impeachment and exculpatory testimony of Casey Jones, Amanda Gibson, Jamal Cheek, Antonio Seymon, Brandon Williams, and Kimmie Karr. In support of this argument, Cheek has submitted: (1) a statement from Seymon stating that he only knew Cheek to sell marijuana; (2) a declaration from Williams that his dealings with Cheek only involved marijuana; (3) a statement from Gibson consisting largely of hearsay from Tabitha Harris; (4) a statement from Jones that Cheek did not sell crack cocaine to his knowledge; (5) the statement of Karr indicating that on two trips to Cicero with Victoria Williams, Williams purchased marijuana from Cheek; (6)

the statement of Tabitha Harris that she did not know Cheek to sell crack cocaine, but bought cocaine from him on one occasion for personal use.

Cheek's trial attorney has submitted an affidavit indicating that he did not interview the suggested witnesses because when he attempted to do so, those who were represented by counsel had been advised not to speak with him. He adds that he did not believe that these witnesses would provide true and correct statements regarding Cheek's participation in the charged offenses. "So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel." *Toliver v. Pollard*, 688 F.3d 853, 862 (7th Cir. 2012), *citing Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011). Cheek has failed to overcome the presumption that, under the circumstances of this case, his trial attorney's decision was sound trial strategy and thus not violative of the Sixth Amendment. *U.S. ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1134 (7th Cir. 1990).

Moreover, even assuming that these witnesses would have testified as represented, there is no reasonable probability that the outcome of the trial would not have been different. Cheek's defense was clearly that he sold marijuana but did not sell crack cocaine, but "the evidence of Cheek's guilt was overwhelming – Cheek admitted that he sold marijuana, and Detective Ferguson as well as a number of Cheek's co-conspirators testified that Cheek distributed crack cocaine." *Cheek*, 740 F.3d at 450. The purported testimony of these witnesses that they were personally unaware of Cheek's dealing in crack cocaine would not have undermined the extensive trial testimony of other witnesses who were personally aware of such dealings (some of which was corroborated by law enforcement) or reflected in recordings made by cooperating witnesses, as reflected in detail in the Government's response.

The fourth claim of error is that Cheek's trial counsel failed to advise of a conflict with Tabitha Harris. Cheek argues that his trial counsel notified the Court that he had a relationship with Tabitha Harris, as she had worked as a go-between to relay messages between him and counsel (who was at that time representing him on a state offense) during his incarceration. During these proceedings, Harris was also present while Amanda Gibson was acting as his go-between to relay messages to counsel and overheard discussions about trial testimony and his defense. Cheek asserts that counsel had an actual conflict of interest because he knew he would have to cross-examine Harris during the trial.

"[A]n attorney's prior representation of another client leads to an actual conflict of interest when the attorney faces the possibility of having to cross-examine his former client." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). Here, however, there is no evidence establishing that Cheek's trial counsel had ever represented Harris, and any representations as to what was allegedly said between Harris and counsel are nothing more than speculative hearsay. Cheek clearly knew of his counsel's relationship with Harris at the time of trial and direct appeal, as their interactions had largely occurred at his request, but voiced no objection at either time. There has simply been no credible showing of an actual conflict of interest, prejudice, or ineffective assistance of counsel.

Cheek supplemented his motion to add a claim that his due process rights were violated because he was not tried and sentenced based on reliable drug amounts. He maintains that certain drug amounts were previously excluded from the calculation of total drug weight based on the fact that he was incarcerated and could not have been present to sell drugs during that time (February 2007 through April 2007). He now argues for the first time that an additional period attributable to drug sales to Corey Eason should be excluded because he was in custody from February 2008 thru July 2008, and Eason was in custody in April and May 2008. He asks the Court to find this

testimony unreliable and exclude all drug weights attributed to him by Eason or alternatively between June 2006 and May 2008.

This claim has been procedurally defaulted, as it was not raised either at sentencing or on direct appeal. He has not demonstrated ineffective assistance of counsel or other cause for his failure to bring this claim in a timely manner. As Cheek admitted that his relevant conduct included at least 1,071 grams of crack cocaine, and he was sentenced within this range, he has failed to demonstrate that he suffered any prejudice as a result of not raising this argument previously. He has therefore failed to establish cause and prejudice to excuse his procedural default, and he is not entitled to relief on this claim.

## CERTIFICATE OF APPEALABILITY

To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). The petitioner must also show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id.

Here, no reasonable jurist could conclude that Cheek's claims were not either barred from consideration, devoid of factual support, or flatly contradicted by the well-established law of this Circuit. Accordingly, this Court will not issue him a certificate of appealability.

## CONCLUSION

For the reasons set forth herein, Cheek's Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255 [1] is DENIED.  This matter is now terminated.

ENTERED this 1st day of December, 2015.

s/ James E. Shadid  
James E. Shadid  
United States District Judge
